COLLOTON, Circuit Judge,
dissenting.
The appeal in this case, involving a claim under Section 2 of the Voting Rights Act, focuses on the third precondition for such a claim established in Thornburg v. Gingles, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986). The district court found that the plaintiffs had not established that the white majority in Martin, South Dakota, “votes sufficiently as a bloc to enable it — in the absence of special circumstances, such as the minority candidate running unopposed — usually to defeat the minority’s preferred candidate.” Id. at 51, 106 S.Ct. 2752. Because I do not believe the district court clearly erred in its conclusion that plaintiffs failed to meet their burden, I would affirm the judgment of the district court.
Vote dilution claims are “peculiarly dependent upon the facts of each case,” requiring “an intensely local appraisal of the design and impact of the contested electoral mechanisms.” Gingles, 478 U.S. at 79, 106 S.Ct. 2752 (internal quotations omitted). To “preserve[] the benefit of the *1124 trial court’s particular familiarity with the indigenous political reality,” id., we apply a “clear error” standard of review both to the predicate factual determinations and to the ultimate finding regarding vote dilution. Id.; Abrams v. Johnson, 521 U.S. 74, 91, 93, 117 S.Ct. 1925, 138 L.Ed.2d 285 (1997). It is the plaintiffs’ burden to demonstrate the existence of vote dilution. Voinovich v. Quilter, 507 U.S. 146, 155-56, 113 S.Ct. 1149, 122 L.Ed.2d 500 (1993).
On appeal, the plaintiffs urge that the district court improperly relied on exogenous election results from a jurisdiction other than Martin, and the court appears to conclude that the district court improperly relied on statewide and national election results. Ante, at 11-12. In the district court, however, the plaintiffs themselves presented and advocated the use of exogenous election data to estimate the demographics of voting within the city. The district court fully recognized that endogenous elections are more probative than exogenous elections. (Mem. Op. and Order, R. Doc. No. 377, at 24) (hereafter “Order”). But given the conclusion of the plaintiffs’ own expert that the small size of the city precluded both regression analysis based only on the city precincts and homogenous precinct analysis, (Appellants’ App. at 530), the plaintiffs presented exogenous data in an effort to meet their burden of proof.
Citing the testimony of their expert, Dr. Cole, the plaintiffs argued that “[wjhile endogenous contests are the most probative of racial bloc voting, courts routinely consider voting patterns in exogenous contests on the ground that any election in which residents of a jurisdiction vote tells us something about voting behavior.” (Pis.’ Post-Trial Proposed Findings of Fact and Conclusions of Law, R. Doc. No. 360, at ¶¶ 243, 374-90). Cole testified that in drawing a conclusion with respect to the third Gingles factor, he followed a process similar to that he used for the second Gingles factor, in which “you look to the exogenous contests,” and “give more weight to exogenous contests that are closer in nature to the city council contests like county level contests as opposed to state and federal contests.” (T. Tr. Ill at 647-49).
The plaintiffs now disagree with the district court’s finding that the evidence did not establish white bloc-voting behavior that usually defeated the Indian-preferred candidate, but I see no legal error in the court’s reliance upon the exogenous election statistics offered by the plaintiffs, and no clear error in the court’s factual determinations based on those data. Although the district court did use data from state and national elections, the district court did not rely on the state and national outcomes in tabulating the wins and losses of Indian-preferred candidates. Cfi ante at 11-12. Rather, the district court relied on the precinct-level results for those elections, which were reported by Dr. Cole and cited by the plaintiffs as the election results for the city of Martin. For example, the court tallied the 1996 presidential election as a “loss” for the Indian-preferred candidate, because that candidate— President Clinton — “lost” in the precincts from the City of Martin, even though he won the office of President in the national election. (Order at 72; Appellants’ App. at 576). The court did, in a few instances, rely on county election results, (Order at 55-56), but this was consistent with the plaintiffs’ position that exogenous data of this type should be used to supplement endogenous data. (R. Doc. No. 360, at ¶¶ 243; T. Tr. III at 647-49).
The hypothetical city results derived from exogenous elections do not demonstrate that the district court’s overall finding as to the third Gingles factor was clearly erroneous. The numbers of inter *1125 racial elections presented to the district court were very small. There were only four head-to-head interracial countywide races; one race was non-polarized, and the non-Indian-preferred candidate won the other three in the city. (Order at 57-58; Appellants’ App. at 555-56). There were only three statewide interracial head-to-head races, and the non-Indian-preferred candidate won those in the city. (Order at 60-61; Appellants’ App. at 555-56). But there were 25 statewide races with white-only candidates, and the Indian-preferred candidate won 15 of those contests in the city. (Order at 64-73; Appellants’ App. at 573-577). There were three “white-only” countywide races; one contest was non-polarized, and the Indian-preferred candidate was victorious in one of the other two in the city. (Order at 62; Appellants’ App. at 574-76). The county results that the district court used to supplement the city results showed that Indian-preferred candidates won five of nine interracial multicandidate races in Bennett County. (Order at 55-56; Appellants’ App. at 547, 549, 550). Overall, even according lesser weight to the county results, these data are mixed, and they fall short of demonstrating clear error by the district court in finding an absence of proof that white voters typically vote as a bloc to defeat Indian-preferred candidates.
Beyond these exogenous election results, there was simply a failure of proof by the plaintiffs. The only other statistical evidence presented to the district court was a 2003 exit poll concerning aldermanic elections. The district court gave specific and cogent reasons for its decision to give no weight to this exit poll. It found that the poll “was not a representative sample of voters as a whole” because it under-represented non-Indians, over-represented Indians, and slightly over-represented females. (Order at 41). The court found that the “high nonresponse rates of non-Indians seriously distorted inferences that could be drawn from the exit poll.” (Order at 42). These factors were a legitimate cause for concern, because exit polls are “ ‘prone to high nonresponse rates which can seriously bias estimates and distort inferences, because people who do not respond may vote differently than those who do.’ ” (Order at 41 (quoting Aldasoro v. Kennerson, 922 F.Supp. 339, 352 (S.D.Cal.1995)). The court further expressed the concern that “exit poll respondents may lie,” id., and thus observed that “[a] truly representative poll of the votes actually cast should logically demonstrate some consistency between the responses to the poll and the actual returns.” Id. In this case, however, the exit poll “fail[ed] to demonstrate consistency between the responses to the poll and the actual returns,” thus tending to undermine any inference that the poll was a reliable indicator of voting behavior. (Order at 41-42).[8]
Under these circumstances, it was not clear error for the court to decline to view the poll as reliable evidence of voting behavior by residents of the City of Martin. There were reasonable grounds for the district court to believe that the poll results may understate the number of Indians who prefer the “non-Indian-preferred candidate,” understate the number of white voters who prefer the “Indian-preferred candidate,” and fail to reflect truthful answers of those who responded.
Nor do I think the district court was required to base its conclusions on the results of the aldermanic elections in 2002, 2003, and 2004, in the city of Martin. There was no statistical evidence regard *1126 ing the results of these elections, other than the 2003 exit poll that the district court found unreliable. The only other evidence regarding these elections was the testimony of several lay witnesses who indicated an opinion regarding the Indian-preferred candidates for those elections, and whether those candidates won or lost. This testimony was disputed. Some of these witnesses presented by the plaintiffs did not even live in Martin. (T. Tr. III at 540; T. Tr. IV at 849, 880, 934). The defendants introduced testimony from Indian voters who did reside in Martin, and this evidence tended to show that Indians, in fact, have varied opinions on issues of the day and on preferred candidates for elective office. (T. Tr. VIII at 1580-85, 1620, 1694; T. Tr. IX at 1802; T. Tr. X at 2104). The district court considered the lay testimony, but found that “[i]n light of the overwhelming statistical evidence, this lay testimony is not sufficient to meet plaintiffs’ burden of demonstrating the usual defeat of the Indian-preferred candidate.” (Order at 74). This is a factual finding that addresses the relative persuasiveness of disputed lay testimony and statistical evidence unfavorable to the plaintiffs, and there is no clear error in the district court’s finding.
At bottom, this is not a case in which the district court materially misapplied the relevant law, failed to address the evidence presented by the plaintiffs, or considered facts that were irrelevant. It is a case in which the plaintiffs disagree with the weight the district court gave to the evidence that they presented. The district court has “particular familiarity with the indigenous political reality,” Gingles, 478 U.S. at 79, 106 S.Ct. 2752, and the record in support of the plaintiffs’ case is not so strong as to generate a “definite and firm conviction that a mistake has been committed.” Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) (internal quotations omitted). I would therefore affirm the judgment of the district court.

. The court also was "troubled by the fact that some of the poll takers were related to one of the plaintiffs,” (Order at 42), but found it unnecessary to determine whether this fact alone was a sufficient basis to disregard the data.